**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **BARBARA SHAFRANSKI,** | : | |
| | : | **Civil Action No. 23-901 (GC) (TJB)** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| **NEWREZ, LLC,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

**BONGIOVANNI, United States Magistrate Judge**

This matter comes before the Court upon Plaintiff Barbara Shafranski's ("Plaintiff")
motion seeking leave to file an amended complaint pursuant to Federal Rule of Civil Procedure
15(a)(2) ("Motion to Amend"). (Docket Entry No. 27.) Defendants Newrez, LLC ("Newrez"),
Shellpoint Mortgage Servicing ("Shellpoint"), and Avenue 365 Lending Services, LLC ("Avenue
365") (collectively, the "Defendants") oppose Plaintiff's Motion to Amend. (Docket Entry No.
30.) The Court has fully reviewed and considered all arguments made in support of and in
opposition to Plaintiff's motion. The Court considers Plaintiff's motion without oral argument
pursuant to L.Civ.R. 78.1(b). For the reasons set forth more fully below, Plaintiff's Motion to
Amend is **DENIED.**

## I.    BACKGROUND AND PROCEDURAL HISTORY

As the parties are familiar with the facts of this case, the Court will only recite the
procedural and factual background relevant to Plaintiff's Motion to Amend. For the purposes of

deciding Plaintiff's motion, the facts that follow are adopted from Plaintiff's Complaint and accepted as true.

In early 2022, Plaintiff sought to refinance her mortgage to her residence with Newrez. (Compl. ¶ 8; Docket Entry No. 1) ("Compl."). She applied for and was approved for the refinancing and proceeded to closing on February 8, 2022. (*Id.* ¶ 9.) At the closing, Plaintiff was asked to execute a Power of Attorney authorizing Newrez or its agent to make, on her behalf, corrections to documents with clerical errors. (*Id.* ¶¶ 1, 12.) Uncomfortable with this request, Plaintiff called Newrez's closing agent, Avenue 365, and was assured that she was permitted to close without signing the Power of Attorney. (*Id.* ¶¶ 12-13.)

At and after the closing, Plaintiff received documents reflecting the issuance of her refinance loan and the payoff of the original mortgage. (*Id.* ¶¶ 13-16.) However, on February 22, 2022, Newrez's agent informed Plaintiff that the refinance loan did not fund because of Plaintiff's failure to sign the Power of Attorney form. (*Id.* ¶ 17.) Newrez's agent further informed Plaintiff that the Power of Attorney form must be signed for the refinance loan to fund; Plaintiff refused to sign the form. (*Id.*) As a result, on February 27, 2022, Plaintiff filed a Complaint with the Consumer Financial Protection Bureau ("CFPB"). (*Id.* ¶ 18.) After receiving the CFPB Complaint, on March 7, 2022, Newrez's agent contacted Plaintiff offering to close the loan and fund the same if Plaintiff signed the Power of Attorney form; Plaintiff did so. (*Id.* ¶ 19.)

Rather than close the existing loan, Newrez created a third mortgage and charged Plaintiff interest for the period during which the original mortgage had not been paid off. (*Id.* ¶ 20.) Plaintiff refused to pay this interest, which resulted in Newrez subsequently denying the refinance and issuing an Adverse Action Notice. (*Id.* ¶¶ 20-21.) By and through her counsel, Plaintiff mailed a certified letter to Newrez and Avenue 365, disputing, *inter alia*, Newrez's right to revoke

its acceptance of the refinance loan and consequently, overcharge Plaintiff. (*Id.* ¶ 22.) Notwithstanding this purported revocation by Newrez, in April 2022, Plaintiff commenced payments under the terms of the refinance loan, which were accepted by Newrez. (*Id.* ¶ 23.) Despite her payments, Shellpoint was assigned the servicing of Plaintiff's loan and issued a Notice of Intention to Foreclose the Original Mortgage ("Notice of Intention to Foreclose") on June 15, 2022. (*Id.* ¶ 24.) The Notice of Intention to Foreclose neither stated the amount due under the refinance loan, seeking payment of the amount due under the original mortgage, nor gave credit to the payments that were being made by Plaintiff. (*Id.* ¶ 25.) While Plaintiff attempted to resolve the issues with Shellpoint through her counsel, she continued to make payments under the terms of the refinance loan. (*Id.* ¶¶ 1, 25-28.) On January 5, 2023, Shellpoint issued another Notice of Intention to Foreclose, which again sought payment of the amount due under the original mortgage. (*Id.* ¶ 28.)

On February 16, 2023, after her attempts to resolve the issues with Shellpoint were unsuccessful, Plaintiff commenced the instant action by way of Complaint, in which she alleges the following seven claims against Defendants: Claim I, common law breach of contract, (*id.* ¶¶ 30-38); Claim II, violations of the New Jersey Consumer Fraud Act, N.J.S.A. § 56-8-19, (*id.* ¶¶ 39-44); Claim III, RESPA violation of 12 U.S.C. § 2605(e)(1) and 12 C.F.R. § 1024.36(c)—Failure to Send Written Acknowledgement of a Servicer's Receipt of a Request for Information Issued Pursuant to 12 C.F.R. § 1024.36, (*id.* ¶¶ 45-56); Claim IV, violation of 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.36(d)—Failure to Respond to a Request for Information Issued Pursuant to 12 C.F.R. § 1024.36, (*id.* ¶¶ 57-70); Claim V, violation of 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R. § 1024.35(d)—Failure to Send Written Acknowledgement of a Servicer's Receipt of a Notice of Error Issued Pursuant to 12 C.F.R. § 1024.35, (*id.* ¶¶ 71-87); Claim VI, violation of

12 C.F.R. § 1024.35(e)—Failure to Properly Respond to a Notice of Error Issued Pursuant to 12

C.F.R. § 1024.35, (*id.* ¶¶ 88-104); and Claim VII, violations of the Fair Debt Collection Practices

Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, (*id.* ¶¶ 105-09).[1]

On June 19, 2024, Plaintiff filed her present Motion to Amend. (Docket Entry No. 27.)  In

the same, Plaintiff claims that, after commencing this action, she applied for and was denied a

credit card from PNC Bank due to a credit report from Experian, a credit reporting agency

("CRA"), dated February 26, 2024 (the "Credit Report"). (Pl.'s Mov. Br., at 1; Docket Entry No.

27-1) ("Pl.'s Mov. Br."). According to Plaintiff, the Credit Report inaccurately reported Plaintiff's

mortgage loan with Newrez as having a past-due balance of $16,345.00 as of December 2023.

(*Id.*)  Pursuant to the Fair Credit Reporting Act ("FCRA"), Plaintiff, through her counsel and by

certified mail, submitted a dispute to Experian on April 3, 2024, which was received and signed

for by Experian on April 9, 2024. (*Id.*)  Despite Plaintiff's notice, Plaintiff neither received a

response nor any indication that Newrez corrected Plaintiff's credit reporting information. (*Id.*)

As a result, Plaintiff now seeks to amend her Complaint to add a claim under the FCRA, Section

1681s-2(b) against Newrez. (*Id.* at 2-3.)

On July 22, 2024, Defendants filed their Opposition to Plaintiff's motion, contending

Plaintiff's proposed FCRA claim is meritless and futile. (Docket Entry No. 30.)  On July 25, 2024,

Plaintiff filed her Reply.  (Docket Entry No. 31.)

---

[1] Claim I is asserted against Newrez; Claim III, IV, and VII are asserted against Shellpoint; Claim
V is asserted against Shellpoint and Avenue 365; and Claim II and VI are asserted against all
Defendants.

## II.    ANALYSIS

### A.  Standard of Review

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend pleadings is generally granted freely. *See Foman v. Davis,* 371 U.S. 178, 182 (1962); *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Nevertheless, the Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman*, 371 U.S. at 182; *see Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2002). However, where there is an absence of undue delay, bad faith, prejudice or futility, a motion for leave to amend a pleading should be liberally granted. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). In deciding whether to grant leave to amend, "prejudice to the non-moving party is the touchstone for the denial of the amendment." *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).

An amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face." *Harrison Beverage Co. v. Dribeck Imp., Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (internal quotation marks and citations omitted). "[F]utility is implicated when the amendment fails to cure a deficiency in the original complaint or fails to state a claim on which relief can be granted." *K.K-M v. New Jersey Dep't of Educ.*, Civ. No. 17-11579, 2020 WL 6817506, at *7 (D.N.J. Nov. 20, 2020) (citing *Jablonski v. Pan American World Airways*, Inc., 863 F.2d 289, 292 (3rd Cir.1988)). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec.*

5

*Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)).

To determine if a complaint would survive a motion to dismiss under Rule 12(b)(6), the Court must accept as true all the facts alleged in the pleading, draw all reasonable inferences in favor of the plaintiff, and determine if "under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "[D]ismissal is appropriate only if, accepting all of the facts alleged in the [pleading] as true, the p[arty] has failed to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Duran v. Equifirst Corp.*, Civ. No. 09-3856, 2010 WL 918444, *2 (D.N.J. March 12, 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Put simply, the alleged facts must be sufficient to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on "'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Bell Atl. Corp.*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974)). Importantly, unless a proposed amendment is "clearly futile . . . denial of leave to amend is improper." *Morton Intern., Inc. v. A. E. Staley Mfg. Co.*, 106 F.Supp.2d 737, 745 (D.N.J. 2000). Further, in assessing a motion to dismiss, while the Court must view the factual allegations contained in the pleading at issue as true, the Court is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007).

### B.  Discussion

The FCRA was "crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant,

and current information in a confidential and responsible manner." *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)). "The FCRA places certain duties on those who furnish information to consumer reporting agencies." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011). "Under 15 U.S.C. § 1681s-2(a), for instance, the furnisher of information has a duty to provide accurate information." *Id.*; 15 U.S.C. § 1681s-2(a). Under 15 U.S.C. § 1681s-2(b), the furnisher of information has "a duty to conduct an investigation into the completeness and accuracy of the information furnished in certain circumstances." *SimmsParris*, 652 F.3d at 357; 15 U.S.C. § 1681s-2(b). The FCRA, under 15 U.S.C. § 1681s-2(b), allows a private citizen to bring an action against a furnisher of information. *SimmsParris*, 652 F.3d at 358 (citations omitted). However, "[t]he duties that are placed on furnishers of information by [15 U.S.C. § 1681s-2(b)] are implicated only '[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency.'" *Id.* (quoting 15 U.S.C. § 1681s-2(b)(1)). That is, "a private cause of action against a furnisher of credit information is only available after the furnisher is notified of a dispute by a CRA." *Esperance v. Diamond Resorts*, Civ. No. 18-10237, 2022 WL 1718039, at *4 (D.N.J. May 27, 2022) (citing 15 U.S.C. § 1681s-2(b)).

Under 15 U.S.C. § 1681s-2(b), once a furnisher of information is notified of a dispute, "the credit furnisher must: '1) conduct an investigation with respect to the disputed information; 2) review all relevant information received from the CRA; 3) report the results of the investigation to the CRA; and 4) if the information is found to be inaccurate or incomplete, report the results to all CRAs to which it originally provided the erroneous information.'" *Id.* (quoting *Van Veen v. Equifax Information*, 844 F. Supp. 2d 599, 604 (E.D. Pa. 2012) (citation omitted)). The Third

Circuit has held that "a furnisher's post-dispute investigation into a consumer's complaint must be 'reasonable[.]'" *Seamans*, 744 F.3d at 865 (quoting *SimmsParris*, 652 F.3d at 359). "If a furnisher fails to comply with these duties, either negligently or willfully, consumers may sue for damages." *Gatanas v. Am. Honda Fin. Corp.*, Civ. No. 20-7788, 2020 WL 7137854, at *2 (D.N.J. Dec. 7, 2020) (citing *Seamans*, 744 F.3d at 864, 868).

In this case, Plaintiff argues that Experian is a CRA, and Newrez is the furnisher of credit information regarding Plaintiff and her mortgage loan. (Pl.'s Mov. Br., at 2.) As her dispute letter to Experian was submitted on April 3, 2024, Plaintiff contends that said dispute letter triggered Newrez's obligation under the FCRA to conduct a reasonable investigation and correct the inaccurate information previously furnished. (*Id.* at 2-3.) Due to Newrez's failure to conduct a reasonable investigation and correct the inaccurate information within the thirty (30) day statutory deadline, Plaintiff now seeks leave to proceed with a FCRA claim against Newrez pursuant to 15 U.S.C. § 1681s-2(b). (*Id.* at 3.) In sum, Plaintiff avers that her claim is not futile, as "her dispute letter to Experian triggered Newrez's statutory obligation to investigate the alleged delinquency of her account and that such an investigation, if done reasonably, would have revealed Plaintiff consistently making full, timely payments pursuant to the refinance Newrez closed with her." (Pl.'s Reply Br., at 3; Docket Entry No. 31.)

Defendants oppose Plaintiff's motion primarily on grounds of futility, arguing that: (1) Plaintiff's proposed FCRA claim is futile, because it turns on a legal question, not a factual inaccuracy; (2) to the extent the Court determines that Plaintiff's claim turns on a factual accuracy, the proposed claim is meritless as Shellpoint's (sued herein as "Newrez")[2] credit reporting was

---

[2] For the purposes of clarity and uniformity, this Opinion shall refer to the applicable Defendant as "Newrez."

accurate; and (3) even if the credit reporting was somehow inaccurate, Plaintiff's proposed claim

fails, as Plaintiff cannot demonstrate that Newrez's investigation in response to her credit dispute

was either willfully or negligently unreasonable.  (Defs.' Opp'n Br., at 3-7; Docket Entry No. 30)

("Defs' Opp'n Br.").

Regarding the legal nature of Plaintiff's proposed FCRA claim, Defendants contend that

Plaintiff's proposed claim is based on the premise that Newrez funded her refinance, thereby

making her subsequent monthly payments under the terms of the refinance loan proper and

Newrez's reporting to the CRA inaccurate.  (*Id.* at 4.)  This premise, according to Defendants, is a

clear legal attack on the validity of the debt, rather than a factual inaccuracy, as Plaintiff

fundamentally claims that the original loan terms no longer apply and that her monthly payments

are governed by the terms of the refinance loan.  (*Id.*)  Defendants maintain that, as courts have

found, whether Plaintiff's original loan terms or refinance loan terms govern is a question that can

only be resolved by a court of law; a question that furnishers "are neither qualified nor obligated

to resolve."  (*Id.* at 3-4.)

Notably, "The United States Court of Appeals for the Third Circuit has not addressed

whether a legal dispute as to the validity or enforceability of a debt renders that debt a "factual

inaccuracy" for purposes of a Section 1681s-2(b) claim against a furnisher."  *Ritz v. Nissan-Infiniti

LT*, Civ. No. 20-13509, 2023 WL 3727892, at *5 (D.N.J. May 30, 2023).  However, district courts

in the Third Circuit have found that "a plaintiff's required showing [under § 1681s–2(b)] is factual

inaccuracy rather than the existence of disputed legal questions, such as whether a Plaintiff was

legally billed of the services disputed." *Esperance*, 2022 WL 1718039, at *5 (quoting *Chiang v.

Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010)) (internal quotation marks omitted);

*Ritz*, 2023 WL 3727892, at *5 (D.N.J. May 30, 2023) (collecting cases in support of this

proposition); *Farrington v. Freedom Mortg. Corp.*, Civ. No. 20-4432, 2022 WL 16552779, at \*10 (D.N.J. Oct. 31, 2022) (citing *Esperance*, 2022 WL 1718039, at \*5); *see Hopkins v. I.C. Sys., Inc.*, Civ. No. 18-2063, 2020 WL 2557134, at \*7 (E.D. Pa. May 20, 2020) (citing *Berkery v. Equifax Info. Servs. LLC*, Civ. No. 18-3417, 2019 WL 1958567, at \*3 (E.D. Pa. May 2, 2019)).

Sister courts have also considered and found that inaccuracies that turn on legal, rather than factual disputes, fail to give rise to a cognizable claim under the FCRA, Section 1681s-2(b). *See Chiang*, 595 F.3d at 38 *(*"[A] plaintiff's required showing is factual inaccuracy, rather than the existence of disputed legal questions . . . Like CRAs, furnishers are 'neither qualified nor obligated' to resolve matters that 'turn[ ] on questions that can only be resolved by a court of law.'"); *see also Hunt v. JPMorgan Chase Bank, Nat'l Ass'n*, 770 F. App'x 452, 458 (11th Cir. 2019) (holding that that the District Court did not err in dismissing plaintiff's 15 U.S.C. § 1681s-2(b) claim pursuant to Rule 12(b)(6) and finding, "Whether [plaintiff] was obligated to make payments on the mortgage after the Foreclosure Action was filed is a currently unresolved legal, not a factual, question. Thus, even assuming [defendant's] furnished information that turned out to be legally incorrect under some future ruling, [defendant's] purported legal error was an insufficient basis for a claim under the FCRA."); *see also Holland v. Chase Bank USA, N.A.*, 475 F. Supp. 3d 272, 277 (S.D.N.Y. 2020) (finding that plaintiff failed to claim under 15 U.S.C. § 1681s-2(b) and explaining, "[Plaintiff's] claim of "factual inaccuracy" relies entirely on his legal conclusion that his debts had been discharged due to the purported running of the relevant state's statute of limitations . . . Such a dispute is a legal, not factual, challenge, and, under the above authority, plainly insufficient to support [plaintiff's] FCRA claim."); *see also Herrell v. Chase Bank USA, N.A.*, 218 F. Supp. 3d 788, 793 (E.D. Wis. 2016) (finding that plaintiff failed to state a claim pursuant to 15 U.S.C. § 1681s-2(b) upon which relief can be granted, as whether the

10

Wisconsin or Delaware statute of limitations applied to plaintiff's debt was a legal question "that

[could] only be resolved by a court of law."); *see also Garey v. BWW L. Grp., LLC*, Civ. No. 8:19-

3112, 2021 WL 4521329, at *17 (D. Md. Oct. 4, 2021) (dismissing plaintiff's 15 U.S.C. § 1681s-

2(b) claim pursuant to Rule 12(b)(6) and stating, "The fact that [plaintiff] continues to dispute the

legality of the foreclosure is of no object—[furnisher] is "neither qualified nor obligated to resolve

a question that can only be resolved by a court of law[.]") (citation omitted); *see also Roberts v.*

*Carter-Young, Inc.*, Civ. No. 1:22-1114, 2023 WL 4366059, at *8 (M.D.N.C. July 6, 2023), *report*

*and recommendation adopted*, Civ. No. 1:22-1114, 2023 WL 7924174 (M.D.N.C. Aug. 10, 2023)

(dismissing plaintiff's 15 U.S.C. § 1681s-2(b) claim pursuant to Rule 12(b)(6), holding that "[p]er

the allegations in Plaintiff's Complaint, there was a legal issue remaining for Defendant to

determine[,]" and finding that plaintiff's claim constituted an "impermissible collateral attack on

the debt.").

Courts maintain that "[f]urnishers are neither qualified nor obligated to resolve matters that

turn on questions that can only be resolved by a court of law." *Esperance*, 2022 WL 1718039, at

*5 (citing *Chiang*, 595 F.3d at 35).

Based on these principles, and after a review of the parties' arguments, the Court finds that

Plaintiff's proposed FCRA, Section 1681s-2(b) claim would be futile. Plaintiff's proposed claim

foundationally turns on the legal validity of the underlying debt. In examining Plaintiff's proposed

FCRA claim, the analysis employed by the District Court in *Hopkins v. I.C. Sys., Inc.*, Civ. No.

18-2063, 2020 WL 2557134, (E.D. Pa. May 20, 2020) is particularly instructive. In *Hopkins,* the

District Court grappled with identifying qualities that define a dispute as legal, rather than factual.

In doing so, the *Hopkins* Court reasoned:

> [Defendant], citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61 (1st Cir.
> 2008), argues that any time a plaintiff disputes that they owe the

underlying debt, that dispute is necessarily legal. But that argument oversimplifies the inquiry. The question is not whether the plaintiff alleges that she does not owe the debt, but the question is why the plaintiff alleges that she does not owe the debt. If a plaintiff argues, for example, that she already paid the debt, that is not a legal dispute. A call or some other form of inquiry to the creditor (or court) will confirm whether the plaintiff has paid the debt or not, or whether a judgment has been marked satisfied. But if the plaintiff argues that the debt is invalid because the creditor breached a contract, that dispute would be legal. In *DeAndrade*, for example, the plaintiff attacked the validity of the mortgage underlying his debt. *Id.* at 68. Whether a mortgage is valid certainly is a quintessential legal question, as compared to a factual question such as whether a mortgage has been recorded.

*Hopkins*, 2020 WL 2557134, at *7.

Considering the *Hopkins* Court's dicta, Plaintiff, in her proposed Amended Complaint and as originally set forth in her operative Complaint, asserts a breach of contract claim against Newrez, asserting that the refinance loan constitutes a binding contract which Newrez materially breached. (Compl. ¶¶ 30-38); (Prop. Am. Compl. ¶¶ 30-38; Docket Entry No. 27-2) ("PAC"). Among other affirmative defenses, Defendants, in their Answer to Plaintiff's Complaint, directly dispute that the 2022 refinance loan constitutes an enforceable contract between Plaintiff and Defendants. (Defs.' Ans., at 19 ¶ 13; Docket Entry No. 12.) Additionally, in asserting her proposed FCRA claim, Plaintiff newly alleges:

> ¶ 119. If Newrez had conducted a reasonable investigation of the dispute, it would have found that Ms. Shafranski refinanced the Original Mortgage and has been consistently making timely monthly payments for the refinanced amount.

> ¶ 120. Additionally, because Newrez knows – by virtue of the events described above and incorporated herein by reference – that Ms. Shafranski refinanced the Original Mortgage and has been consistently making timely monthly payments for the refinanced amount, Newrez's failure to correct the information it furnishes about Ms. Shafranski and the Original Mortgage is willful.

(PAC ¶¶ 119-20.)

It is clear that Plaintiff believes that the 2022 refinance loan is the operative contract between the parties, thereby making Newrez's crediting reporting factually inaccurate. However, as evidenced by Plaintiff's breach of contract claim and Defendant's affirmative defenses thereto, whether the 2022 refinance loan constitutes a binding contract is currently an unresolved legal, not factual, question that can only be resolved by a court of law. Because no formal adjudication has occurred on the validity and enforceability of the 2022 refinance loan, thereby either discharging or upholding Plaintiff's debt, Plaintiff's Section 1681s-2(b) claim has not ripened to address a factual inaccuracy in Newrez's credit reporting. That is, since there is a fundamental legal dispute as to whether the original mortgage or the refinance loan is the operative contract between the parties, a more thorough and complete investigation would not have altered Newrez's conclusion that Plaintiff failed to make timely monthly payments under the original mortgage; the loan that it perceives to be the operative contract. (*See* Defs.' Opp'n Br., at 5-6) (arguing that Plaintiff, by her own admissions, concedes that the original loan and mortgage is the operative loan that Shellpoint is servicing.) As mentioned, "[f]urnishers are neither qualified nor obligated to resolve matters that turn on questions that can only be resolved by a court of law." *Esperance*, 2022 WL 1718039, at *5 (citing *Chiang*, 595 F.3d at 35).

Accordingly, as Plaintiff's proposed FCRA claim is inherently premised on an unresolved legal question and as the required threshold showing under Section 1681s–2(b) is the existence of factual inaccuracy rather than the existence of disputed legal questions, Plaintiff's Motion to Amend fails to state a claim upon which relief may be granted. Plaintiff's Motion to Amend is **DENIED** as futile.

## III.    CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Amend is **DENIED.**  An appropriate

Order follows.

Dated: January 31, 2025

s/ Tonianne J. Bongiovanni

**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**
